UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MICHAEL LE ROUX,

    Plaintiff,

    v.

CENTRAL OREGON TRUCK COMPANY,
INC., an Oregon Corporation,

    Defendant.

Case No. 6:17-cv-00533-JR

OPINION AND ORDER

RUSSO, Magistrate Judge:

Defendant Central Oregon Truck Company, Inc., ("COTC") moves for summary judgment on plaintiff Michael Le Roux's claims pursuant to Fed. R. Civ. P. 56. For the reasons set forth below, defendant's motion is denied.

## BACKGROUND

Plaintiff began working for COTC in January 2015 as a commercial truck driver. Compl. ¶ 6 (doc. 1). Throughout his first year at COTC plaintiff did not receive a single citation. Le

Roux Decl. ¶ 8 (doc. 26). In January 2016, plaintiff was assigned trailer 413Q which was approximately 10 years old. Le Roux Decl. ¶ 14 (doc. 26). Throughout the three months driving trailer 413Q plaintiff received six citations. Compl. ¶ 10 (doc. 1). Plaintiff repeatedly reported problems with trailer 413Q to his supervisors in the daily Driver Vehicle Inspection Reports ("DVIRs") and in emails. Le Roux Decl. ¶¶ 15-29. (doc. 26).

On April 7, 2016, plaintiff was ticketed for being overweight on the axles. Le Roux Decl. ¶ 34. (doc. 26). Plaintiff reported on his April 7, 2016, DVIR that the "truck, trailer, and load were difficult to weigh due to changing air pressures on [the] tag axles." Id. After dropping off the load, plaintiff wrote an email in which he informed his employers he was "not hauling any more loads with this truck or trailer until the issues [were] corrected." Le Roux Decl. Ex. 12, at 2 (doc. 26-12). The COTC dispatcher, Ms. Cantrell, responded with a message indicating plaintiff would not be permitted to return with an empty truck and instructed him to pick up a load in Clarkston, Washington. Le Roux Decl. Ex. 13, at 1 (doc. 26-13). On the morning of April 8, 2016, plaintiff spoke with his supervisor, who assured plaintiff he would find a lighter load for him so he would not be overweight on the axles. Le Roux Decl. ¶ 37. (doc. 26).

Ms. Cantrell dispatched the details for the lighter load to plaintiff. Le Roux Decl. Ex. 14 (doc. 26-14). In the dispatch Ms. Cantrell listed the pick-up time as 3:30 PM. Le Roux Decl. Ex. 14, at 1 (doc. 26-14). The correct pick-up time was 3:00 PM. Plaintiff arrived at Bennett Lumber around 3:03 or 3:04 PM, nearly 30 minutes before he was instructed to be there. Bennett Decl. Ex. 9, at 12 (doc. 27-9). Upon his arrival, plaintiff found that all of the Bennett Lumber employees had gone home and the lumber yard was locked and deserted. Bennett Decl. Ex. 9, at 12 (doc. 27-9). When he contacted his employer he was informed he should spend the night in Clarkston, Washington, rent a car on Saturday morning and drive 350 miles to return home and

Page 2 – OPINION AND ORDER

then drive 350 miles back to Clarkston by Monday morning to pick up the load at Bennett Lumber. Le Roux Decl. ¶ 41 (doc. 26). It is unclear whether COTC would have reimbursed plaintiff for the costs of the hotel room and rental car. At this point plaintiff concluded his employer was "trying to frustrate [him] to the point that [he] would quit." Le Roux Decl. ¶ 41 (doc. 26). Plaintiff sent in his resignation and informed his supervisors he would return the truck that evening. Le Roux Decl. ¶ 42 (doc. 26). COTC employees called plaintiff and left voicemails threatening him with jail if he did not stop the truck and turn it around. Le Roux Decl. ¶ 43 (doc. 26); Bennett Decl. Ex. 5, at 7-8 (doc. 27-5).

Throughout his employment, plaintiff repeatedly requested that his employer repair trailer 413Q. Two days after plaintiff resigned, COTC began significant efforts to repair the trailer. Bennett Decl. Ex 6, at 15 (doc. 27-6). Within seven weeks of plaintiff's resignation, COTC had spent almost four thousand dollars on repairs to trailer 413Q. See Bennett Decl. Ex. 6 (doc. 27-6). Shortly thereafter, the trailer was placed in storage and no longer used. Bennett Decl. Ex. 13, at 26 (doc. 27-13).

On April 4, 2017, plaintiff filed a complaint against defendant asserting claims of retaliation for reporting safety concerns under the Surface Transportation Assistant Act ("STAA"); retaliation for refusing to operate a commercial vehicle that violates a safety standard under the STAA; and whistleblower retaliation under Oregon law. Compl. (doc. 1).

**STANDARD OF REVIEW**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file, if any, show "there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. T.W. Elec. Servs., Inc.

v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of the dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Elec., 809 F.2d at 630–31.

## DISCUSSION

Defendant argues summary judgment is proper as to plaintiff's claims for relief, and that partial summary judgment is proper on each of plaintiff's claims for lost wages and benefits.

I. Retaliation for Reporting a Violation of a Safety Regulation

Plaintiff alleges he was retaliated against for reporting safety concerns under the STAA. 49 U.S.C. § 31105(a)(1)(A). The STAA prohibits an employer from discharging, disciplining, or discriminating against an employee regarding pay, terms, or privileges of employment because:

> the employee, or another person at the employee's request, has filed a complaint or begun a proceeding related to a violation of a commercial motor vehicle safety or security regulation, standard, or order, or has testified or will testify in such a proceeding[.]

49 U.S.C. § 31105(a)(1)(A)(i). Defendant argues that plaintiff's complaint does not allege that any commercial motor vehicle safety or security regulation has been violated.

Plaintiff, however, alleges that defendant violated 49 C.F.R. § 396.3(a) which requires that "[e]very motor carrier . . . must systematically inspect, repair, and maintain, or cause to be systematically inspected, repaired, and maintained, all motor vehicles . . . subject to its control." Plaintiff also alleges defendant violated 49 C.F.R. § 396.11(3) which directs that "[p]rior to requiring or permitting a driver to operate a vehicle, every motor carrier . . . shall repair any defect or deficiency listed on the driver vehicle inspection report which would be likely to affect the safety or operation of the vehicle." Plaintiff further alleges that on February 25, 2016, he was ticketed because the trailer was in violation of three separate safety regulations: overweight on the axles in violation of 49 C.F.R. § 392.2; side hose chafing in violation of 49 C.F.R. 393.45(b)(2); and driver side brake chamber leaking air in violation of 49 C.F.R. § 396.3(a)(1). See Le Roux Decl. Ex. 5, at 2 (doc. 26-5). Plaintiff reported these defects in his DVIRs and repeated repair requests.

Plaintiff has fulfilled his obligation to file "a complaint . . . related to a violation of a commercial motor vehicle safety or security regulation, standard, or order," because internal reports to an employer are sufficient to qualify as "complaints" under 49 U.S.C. § 31105(a)(1)(A). See Clean Harbors Envtl. Servs. v. Herman, 146 F.3d 12, 22–23 (1st Cir. 1998); Moon v. Transport Drivers, Inc., 836 F.2d 226, 228–29 (6th Cir. 1987); Yellow Freight Systems, Inc. v. Reich, 38 F.3d 76, 83–84 (2nd Cir. 1994); Manske v. UPS Cartage Servs., Inc., 870 F.Supp.2d 185, 203–05 (D. Me. 2012).

Defendant next argues there was no evidence of any retaliation against plaintiff because none of the alleged adverse actions rise to the level of "material adversity" required to demonstrate retaliation. Young Bolek v. City of Hillsboro, 2016 WL 9455411, *12 (D. Or. 2016). "To be materially adverse, an action need not rise to the level of an ultimate employee

Page 5 – OPINION AND ORDER

action, such as discharge. However, actions such as a lateral transfer, an unfavorable job reference, or a change in work schedule may be sufficiently severe" to qualify as materially adverse. Young Bolek, 2016 WL 9455411 at *12 (citing Ray v. Henderson, 217 F.3d 1234, 1242–43 (9th Cir. 2000)). "The requirement to prove 'material' adversity precludes claims grounded in 'petty slights, minor annoyances, and simple lack of good manners' that do not rise to a level that will deter an employee from lodging a report." Young Bolek, 2016 WL 9455411 at *12 (citing Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)).

Plaintiff asserts the following actions amounted to retaliation: failure to provide a safe trailer; failure to reimburse him for his tickets and legal expenses caused by driving an unsafe trailer; sending him to Clarkston, Washington for a load defendant knew would not be available; threatening him with police intervention and jail; and failing to rehire him or make him eligible for rehire. Plaintiff argues the defendant created these discriminatory conditions with the intent to cause plaintiff to quit which amounted to constructive termination. Compl. ¶ 6, 23 (doc. 1).

Defendant argues there is no evidence the trailer was unsafe; rather, "the issues plaintiff was allegedly experiencing with his trailer were mechanical issues, not safety issues." Def.'s Mot. Summ. J. 12 (doc. 20). The record contains evidence that at least some of the problems with the trailer were safety issues. Specifically, on February 25, 2016, plaintiff was ticketed because the trailer was in violation of three safety regulations. See Le Roux Decl. Ex. 5, at 2 (doc. 26-5). In particular, one of the brake chambers was leaking air in violation of 49 C.F.R. § 396.3(a)(1), which requires that "[p]arts and accessories shall be in safe and proper operating condition at all times." As such, there is evidence the mechanical issues were also, at least to some extent, safety issues.

Defendant next argues its actions were not retaliatory because "COTC was trying to help plaintiff remedy his perceived trailer issues." Def.'s Mot. Summ. J. 13 (doc. 20). During the three months plaintiff reported problems with the trailer, there were only three attempts at making repairs: in February at a cost of $95.00, in March at a cost of $493.41, and in April at a cost of $105.72. See Bennett Decl. Ex. 6, at 3, 14, 17 (doc. 27-6). The day after plaintiff resigned, however, defendant spent $1,113.69 on trailer repairs. Bennett Decl. Ex 6, at 15 (doc. 27-6). Within two months of plaintiff's resignation, defendant spent $3,714.90 on trailer repairs. See Bennett Decl. Ex. 6 (doc. 27-6). On July 11, 2016, despite several repair attempts, the trailer was removed from COTC's fleet and placed in storage. Bennett Decl. Ex. 13, at 26 (doc. 27-13). Based on these facts, a reasonable jury could conclude defendant did not make a serious effort to remedy the issues with the trailer until after plaintiff resigned, and even after spending nearly $4,000 on repairs, defendant was unable to make the trailer road worthy.

Defendant also argues that plaintiff was not entitled to be reimbursed for the traffic tickets because it is the driver's responsibility to weigh each load and the company does not reimburse drivers for tickets due to the driver's error. Although plaintiff may have had a duty to weigh every load, he indicated he was unable to get an accurate reading on the weight over the axles because the air gauges were malfunctioning. Le Roux Decl. ¶ 34 (doc. 26). Additionally, plaintiff was not cited exclusively for the trailer being overweight, he was also cited for side hose chafing in violation of 49 C.F.R. § 393.45(b)(2), and the driver side brake chamber leaking air in violation of 49 C.F.R. § 396.3(a)(1). Defendant has not argued that such violations were a result of driver error and there is no indication plaintiff was reimbursed for those citations.

Defendant contends plaintiff was not sent to Clarkston, Washington in order to intentionally strand him; rather, there was a miscommunication. Defendant asserts there is

Page 7 – OPINION AND ORDER

"absolutely no evidence" that sending plaintiff to Clarkston was a deliberate "set up." Def.'s Mot. Summ. J. 13 (doc. 20); Def's Reply 3 (doc. 33). To the contrary, there is ample circumstantial evidence to support plaintiff's allegation. Even though defendant worked with Bennett Lumber almost daily, Ms. Cantrell officially dispatched plaintiff with a pick-up time of 3:30 PM, despite the fact she knew Bennett Lumber closed at 3:00 PM. Bennett Decl. Ex. 7, at 6, 8, 14, 16-17 (doc. 27-7). Ms. Cantrell testified the incorrect arrival time of 3:30 PM could have been "automatically populated" in the system. Bennett Decl. Ex. 7, at 16-17 (doc. 27-7). Her supervisor, however, testified the pick-up time in defendant's dispatch system must be manually entered by the dispatcher and cannot, in fact, be automatically populated. Bennett Decl. Ex. 10, at 22-23 (doc. 27-10). At some point earlier in the week Ms. Cantrell indicated the pick-up time might be 3:00 PM; however, on the day plaintiff drove to Clarkston, Ms. Cantrell sent him the incorrect pick-up time of 3:30 PM. Le Roux Decl. Ex. 14, at 1 (doc. 26-14).

Although it is part of Ms. Cantrell's job to communicate with the shipper when a driver is running late to let them know the truck will be arriving shortly, she could not recall whether she had done so when plaintiff was on his way to Bennett Lumber and she could not explain why she would not have done so. Bennett Decl. Ex. 7, at 13-14 (doc. 27-7). Plaintiff additionally testified Ms. Cantrell sounded amused when he called to inform her there was no load ready for pick up at Bennett Lumber. Decl. Le Roux ¶ 40 (doc. 26).

The Court also notes it seems odd that every Bennett Lumber employee had left the yard by plaintiff's arrival time of 3:03 PM. According to defendant, Bennett Lumber was expecting plaintiff to pick up a load of lumber at 3:00 PM. As such, they would be expecting to stay past 3:00 PM to load the truck, yet when plaintiff arrived at 3:03 PM, every employee was gone. This

is further circumstantial evidence supporting plaintiff's contention that Bennett Lumber had never scheduled a load for pick up at 3:00 PM on April 8, 2016.

With regard to the threats to have plaintiff arrested, defendant argues that "informing plaintiff of the consequences he would face if he did not stop the truck [was] consistent with COTC policy and not retaliatory." Def.'s Mot. Summ. J. 15 (doc. 20) (citing Hellman v. Weisberg, 360 Fed.Appx. 776 (9th Cir. 2009)). Notably, COTC does not have an official written policy for calling the police and reporting a truck stolen when a driver returns with an empty truck without permission. Bennett Decl. Ex. 13, at 19-20 (doc. 27-13).

In Hellman, the court held the fact the employer indicated he "wanted to fire [the employee] and have her criminally prosecuted" was insufficient to constitute material adversity because "the mere threat of *termination* does not constitute an adverse employment action." Hellman v. Weisberg, 360 Fed.Appx. 776, 779 (9th Cir. 2009) (emphasis added). The threat to plaintiff here was different in a critical way; unlike in Hellman, where the threat was abstract and indefinite, here, plaintiff was faced with a concrete threat that the police would be called immediately and he would be arrested for allegedly stealing the truck. Le Roux Decl. ¶ 43 (doc. 26); Bennett Decl. Ex. 5, at 7-8 (doc. 27-5). Moreover, when plaintiff's supervisor, Mr. Burroughs, threatened to call the police to arrest plaintiff, he indicated plaintiff would go to jail for more than six months. Bennett Decl. Ex. 5, at 7-8 (doc. 27-5). Additionally, Mr. Burroughs specifically indicated plaintiff would be in jail that night. Bennett Decl. Ex. 5, at 9 (doc. 27-5) ("You do not want to go to jail tonight and that's what is going to happen if you keep going.").

Next, defendant asserts that because the decision to make plaintiff ineligible for rehire was made after the employment relationship had ended, the decision did not constitute actionable retaliation. Defendant fails to cite any statute, regulation, or case, to support such an assertion. In

Ray, the Ninth Circuit specifically indicated that an "unfavorable job reference" can constitute material adversity. Ray, 217 F.3d at 1242–43; see also Young Bolek, 2016 WL 9455411 at *12.

With regard to plaintiff's constructive termination claim, defendant argues that when an employer gives the employee the opportunity to return to work, there is no constructive termination. See Irizarry v. Lily Transportation Corp., 266 F.Supp.3d 600, 606 (D. Conn. 2017). In Irizarry, the employer reached out to the employee after he resigned to offer him an opportunity to return to work. Id. Conversely, here, defendant did not offer plaintiff an opportunity to return to work after he resigned. Although Mr. Burroughs at one point indicated there might be a way for plaintiff to return to work, he quickly followed up with multiple threats that plaintiff would be sent to jail. Bennett Decl. Ex. 5, at 7-9 (doc. 27-5). Even if a jury could reasonably conclude defendant sincerely offered plaintiff an opportunity to return to work, a reasonable jury could also conclude it was an insincere offer made in an attempt to convince plaintiff to turn the truck around. Thus, summary judgment is not appropriate.

Defendant argues its conduct did not amount to constructive termination, because such a cause of action requires an employee to resign due to "unendurable working conditions." Def.'s Mot. Summ. J. 16 (doc. 20) (citing Carroll v. Holder, 2011 WL 7091804, *25 (D. Or. 2011)) (internal quotations omitted). Carroll defined unendurable conditions as "so intolerable that a reasonable person . . . would have felt compelled to resign." Carroll v. Holder, 2011 WL 7091804, *25 (D. Or. 2011) (citing Poland v. Chertoff, 494 F.3d 1174, 1184 (9th Cit. 2007)) (internal quotations omitted). Defendant argues the Ninth Circuit has previously held that evidence of an out of state transfer and demotion were insufficient to establish constructive termination. Poland, 494 F.3d at 1178–79. Notably in Poland, the employee worked for five months after the allegedly unendurable conditions arose before "he decided to take early

Page 10 – OPINION AND ORDER

retirement." Id. at 1185–86. Furthermore, after he requested retirement, he worked an additional three months. Id. Here, plaintiff did not continue to work for COTC after the conditions allegedly became unendurable.

Moreover, plaintiff argues COTC subjected him to unendurable conditions because COTC intentionally stranded him in Clarkston, Washington for the sole purpose of causing him to quit. If plaintiff's predicament in Clarkston had been an innocent mistake, plaintiff could have expected things to improve; however, assuming he was intentionally stranded, it would be a reasonable expectation that the antagonizing would continue and potentially worsen. As discussed above, there is sufficient evidence for a reasonable jury to conclude COTC's conduct was intentional. Furthermore, the context of plaintiff's allegedly unendurable working conditions was not limited to his stranding in Clarkston. Plaintiff had complained of safety problems with his trailer for the previous three months and over the course of those three months, COTC took minimal action to address those concerns and ultimately failed to repair the safety problems. See Bennett Decl. Ex. 6, at 3, 14, 17 (doc. 27-6); Le Roux Decl. ¶¶ 15-29. (doc. 26). After plaintiff resigned, however, COTC spent nearly four thousand dollars attempting to repair the trailer. See Bennett Decl. Ex. 6 (doc. 27-6). Additionally, due to the trailer's unrepaired deficiencies, plaintiff was cited six times and COTC refused to reimburse plaintiff for those citations.

Accordingly, a reasonable jury could conclude that a job in which an employer repeatedly failed to repair safety issues with the employee's vehicle, forced the employee to pay out of his own pocket the cost of the traffic tickets resulting from the unrepaired safety issues, and intentionally antagonized the employee by sending him to a remote area for the purpose of stranding him, would constitute unendurable working conditions. As such, summary judgment is not appropriate on plaintiff's claims for retaliation for reporting safety concerns.

II. Retaliation for Refusing to Operate a Commercial Vehicle under the STAA

Defendant asserts plaintiff has no evidence to support a retaliation claim for refusing to operate a vehicle that violates a safety standard under the STAA. Defendant argues that plaintiff's claim fails because he drove the vehicle; therefore, he never actually refused to drive. However, "the refusal-to-operate provision could cover a situation in which an employee refuses to use his vehicle in the manner directed by his employer even if that refusal results in the employee driving the vehicle." TransAm Trucking, Inc. v. Admin. Review Bd., U.S. Dep't of Labor, 833 F.3d 1206, 1211–12 (10th Cir. 2016). The court in TransAm specifically cites as an example a truck driver who refused to haul a full load as instructed by the employer, but ultimately hauled a lighter load. See Id. at 1212 (citing Beveridge v. Waste Stream Envtl., Inc., ARB No. 97-137, 1997 WL 806522, at *1 (ARB Dec. 23, 1997)). Defendant argues this situation differs from TransAm because plaintiff agreed to take a lighter load; however, defendant ignores the fact that, like the example above, plaintiff had *refused* to haul a heavy load, despite being directed to do so. As such, plaintiff did refuse to use his vehicle in the manner directed by his employer.

A refusal to drive claim under the STAA requires an "actual violation" of a federal motor carrier safety regulation. 49 U.S.C. § 31105(a)(1)(B). Defendant argues plaintiff has failed to demonstrate there was an actual violation of any federal motor carrier safety regulation. Plaintiff asserts that due to the malfunctioning air pressure gauges, he was unable to comply with 49 C.F.R. § 392.2 which required compliance with state laws. Oregon state law prohibits excessive weight over the axles with a heavy haul load. See Le Roux Decl. Ex. 5, at 2 (doc. 26-5). On April 7, 2016, plaintiff was cited for exactly that reason; the trailer was overweight over the axles. Le

Roux Decl. ¶ 34 (doc. 26). As such, there was an actual violation of a federal motor carrier safety regulation.

Defendant cites a Seventh Circuit case for the proposition that an "employee is only protected for refusing to drive a vehicle if he first asked his employer to correct the hazardous safety condition, but the safety hazard remained uncured." Gaines v. K-Five Constr. Corp., 742 F.3d 256, 264 (7th Cir. 2014). Defendant argues COTC addressed plaintiff's concerns by securing the lighter load. Defendant, however, ignores the fact that plaintiff refused to take a heavy haul load and COTC had already failed to address the underlying problem that made the truck unsuitable for carrying heavy haul loads, despite plaintiff's many requests to repair the safety issues. Le Roux Decl. ¶¶ 15-29. (doc. 26).

Defendant renews its argument that plaintiff cannot show there was any adverse employment action. As discussed above, however, a reasonable jury could conclude defendant took adverse employment actions against plaintiff.

III. Whistleblower Retaliation under O.R.S. § 659A.199

Defendant argues that plaintiff failed to present evidence sufficient to establish a violation of O.R.S. § 659A.199. Specifically, defendant argues there is no evidence COTC "discharged, demoted, suspended, or discriminated or retaliated against plaintiff with regard to any term, condition, or privilege of employment, because plaintiff reported the information." Def.'s Mot. Summ. J. 21 (doc. 20).

Pursuant to O.R.S. § 659A.199, plaintiff must demonstrate he believed there was a "violation of a state or federal law, rule or regulation," he reported such violation in "good faith," and COTC retaliated against him with regard to "compensation or other terms, conditions or privileges of employment." O.R.S. § 659A.199(1).

There is sufficient evidence from which a jury could reasonably find that plaintiff believed there was a violation of state or federal regulations because in his emails to his supervisors he specifically referred to the traffic citations which were based on violations of federal regulations. See Le Roux Decl. Ex. 5, at 2 (doc. 26-5); Le Roux Decl. Ex. 12, at 2 (doc. 26-12); Le Roux Decl. Ex. 7, at 1 (doc. 26-7). A jury could reasonably find plaintiff acted in good faith because there is no indication, and defendant does not allege, plaintiff was not acting in good faith.

Although plaintiff was not discharged, suspended, or demoted, he alleges he was constructively discharged. "Under Oregon law, a constructive discharge occurs either when an employee is told to resign or be fired or when an employee resigns as a result of intentionally created unacceptable or intolerable working conditions." Garmon v. Plaid Pantries, 2013 WL 3791433, *26 (D. Or. 2013) (citing Sheets v. Knight, 308 Or. 220, 227–28, 779 P.2d 1000 (1989)). To establish a claim of constructive discharge stemming from unacceptable working conditions under Oregon law, plaintiff must prove:

> (1) that the employer intentionally created or intentionally maintained specified working condition(s); (2) those working conditions were so intolerable that a reasonable person in the employee's position would have resigned because of them; (3) the employer desired to cause the employee to leave employment as a result of those working conditions or knew that the employee was certain or substantially certain, to leave employment as a result of those working conditions; and (4) the employee did leave the employment as a result of those working conditions.

Garmon , 2013 WL 3791433 at *26 (citing McGanty v. Staudencraus, 321 Or. 532, 556–57, 901 P.2d 841 (1995)). Plaintiff has presented sufficient evidence for a jury to reasonably find that COTC intentionally maintained working conditions in which the mechanical and safety problems with plaintiff's trailer were not addressed, plaintiff was required to pay the citations which

Page 14 – OPINION AND ORDER

resulted from those mechanical and safety problems, and COTC intentionally sent plaintiff to Clarkston, Washington to pick up a load that would not be available in order to strand him in Clarkston. A reasonable jury could conclude those working conditions were unendurable.

Viewing the facts in the light most favorable to plaintiff, a reasonable jury could also find defendant desired to cause plaintiff to resign. Although defendant asserts COTC staff "were taking steps" to find plaintiff a new trailer and they were going to ensure it was in "tip top" shape, defendant's previous promises to deliver plaintiff a new trailer had never materialized. Def.'s Mot. Summ. J. 5 (doc. 20); Le Roux Decl. ¶¶ 30, 45 (doc. 26). With regard to the final element, the evidence reflects plaintiff resigned as a result of the working conditions. See Le Roux Decl. ¶¶ 20-42 (doc. 26). In sum, a reasonable jury could find plaintiff's claim satisfies the elements necessary to establish a constructive discharge.

Furthermore, plaintiff alleges his bonus was negatively affected by the citations resulting from the mechanical and safety deficiencies of his trailer. See Le Roux Decl. Ex. 12, at 2 (doc. 26-12). Retaliation against employees with regard to their compensation is also prohibited under O.R.S. § 659A.199(1). Accordingly, summary judgment is not appropriate on plaintiff's Oregon whistleblower retaliation claim.

IV. Failure to Mitigate Damages

The mitigation of damages doctrine prevents an injured party from recovering damages he could have avoided if the injured party had made reasonable efforts after the wrong was committed. See Jackson v. Shell Oil Company, 702 F.2d 197, 201–02 (9th Cir. 1983). As the entity asserting a failure to mitigate damages, defendant bears the burden of proof. See Odima v. Westin Tuscon Hotel, 53 F3d. 1484, 1497 (9th Cir. 1995). To satisfy this burden, defendant has to prove "that, based on undisputed facts in the record, during the time in question there were

Page 15 – OPINION AND ORDER

substantially equivalent jobs available, which the plaintiff could have obtained, and that the plaintiff failed to use reasonable diligence in seeking one." Id. (internal quotations and citations omitted).

Defendant argues plaintiff is not entitled to lost wages and benefits because he has failed to present evidence that he mitigated his damages. Dunn v. CSK Auto, Inc., 2006 WL 2345807 (D. Or. 2006). In Dunn, the plaintiff failed to mitigate her damages because she voluntarily withdrew from the job market two years after she quit her job and she only applied for eight to twelve jobs prior to her withdrawal. Despite finding the plaintiff failed to use "reasonable efforts" to find suitable employment, the court in Dunn ultimately concluded that "[c]onsidering that it reasonably may take some period of time to begin to search for new employment (targeting likely employers, tracking advertisements, updating a resume, etc.), and given that she did put forth some minimal effort in looking, I award plaintiff six months of lost past wages." Dunn, 2006 WL 2345807 at *3.

Defendant argues, for the first time in its reply brief, that in July 2016, plaintiff became unable to work due to health problems. Therefore, argues defendant, plaintiff is not entitled to any lost wages after that point in time because he voluntarily withdrew from the workforce. As a preliminary matter, the Court need not consider arguments first raised in a reply brief. Lentini v. Cal. Ctr. for the Arts, Escondido, 370 F.3d 837, 843 n. 6 (9th Cir. 2004). Moreover, plaintiff did not state that he discontinued his job search in July 2016; rather, plaintiff reported that around that time he was continuing to search for jobs. Plaintiff explained that in July 2016 he was experiencing increasing pain in his knee and lower back which eventually required surgery; however, plaintiff did not indicate he stopped applying for jobs. See Le Roux Decl. ¶¶ 51-53 (doc. 26).

Defendant asserts that despite resigning in April 2016, plaintiff did not start applying for jobs until November 2017. Although plaintiff's declaration is not precise with regard to the exact timing, in reference to the period between April 10, 2016, and June 1, 2016, plaintiff stated he "*continued* to look for opportunities for non-entry level local commercial truck driving jobs like [he] had with COTC." Le Roux Decl. ¶ 51 (doc. 26) (emphasis added). This indicates plaintiff began his job search shortly after he resigned from COTC. Moreover, plaintiff's deposition testimony reflects that he applied for "hundreds" of jobs. Bennett Decl. Ex. 9, at 2 (doc. 27-9). Defendant cites expert testimony that there were similar jobs available and if plaintiff had searched diligently he would have quickly found another job. See Def.'s Mot. Summ. J. 24 (doc. 20). Defendant also argues plaintiff documents his job search beginning in November 2017. Id. at 23. Nevertheless, defendant has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 323. Because plaintiff asserted he began searching for jobs shortly after resigning and testified he applied for hundreds of jobs, there exists a genuine question of material fact on this issue. Accordingly, summary judgment is not appropriate regarding mitigation of damages.

## CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment (doc. 20) is DENIED. The parties' Pretrial Order is due thirty (30) days from the date of this Opinion.

DATED this 28th day of June 2018.

s/ Jolie A. Russo<br>
JOLIE A. RUSSO<br>
United States Magistrate Judge